BAINBRIDGE *et al*
*vs*
OWEN'S ADM'R.
*et al.*
—————
As between cred-
itors whose at-
tachments are
all levied at the
same time, there
shall be distribu-
tion *pari passu.*

———

## Bainbridge *et al. vs* Preston Owen's Administrator *et al.*

### ERROR TO THE LOUISVILLE CHANCERY COURT.

*Lien.    Guaranty.    Parties.*

JUDGE EWING delivered the opinion of the Court.

THIS is the third time that this case has been brought to this Court. On the two former occasions it was reversed, because the proper parties were not before the Court. The opinion of the Court, and statement of some of the facts of the case, the first time it was reversed, will be found reported in 2 *J. J. Marshall,* 463. Be-

fore it was reversed, the house and lot was sold under the first decree for $100, and Taylor, the attorney of Bainbridge, became the purchaser, and Bainbridge executed the bond for the purchase money, as his surety. This sale was reported to the Court, and confirmed a conveyance made and confirmed, and the money paid and applied as a credit on the demand of Owen, except five dollars, which was paid to the commissioner. Before the return of the cause to the Circuit Court, Shipman was brought before the Court, and Owen amended his bill, in which he charges the sale and purchase by Taylor, for the benefit of Bainbridge, and the subsequent sale by the latter to one Shields, for $600, and that Shields had made large and valuable improvements upon the lot, so that it was then worth $2000, and makes Shields a defendant. Shields answered, setting up his purchase, the payment of the consideration, and the acceptance of a deed from Taylor, and his having made lasting and valuable improvements, under the faith of his purchase, and insisting on his being an innocent purchaser, &c. &c. Bainbridge failed to answer the amended bill, and it was taken for confessed against him, and a joint and several decree rendered against him and Price's heirs for the residue of the debt in favor of Owen. The case having been brought to this Court by Bainbridge the second time, it was again reversed, because though Price's heirs had answered by guardian *ad litem*, it did not appear that they had been served with process, and were therefore not regularly before the Court. Upon the return of the cause the second time, and further preparation, the case having in the mean time been removed to the Louisville Chancery Court, the Chancellor upon the hearing decreed Bainbridge to pay the whole residue of Owen's demand, interest, &c. and Bainbridge has brought this decree to this Court for revision.

We think that Bainbridge, in any view of the case, cannot be made liable for the whole amount of the balance of Owen's debt, but we think he ought to be made accountable for an amount of the debt of Owen equal to the amount which he made by the purchase and sale of the lot.

One of two persons who was bound by contract to pay the balance of a debt which might not be raised by a lien given on a house and lot,

purchasing the
same at a great
sacrifice under a
decree to which
the other guar-
antor was no par-
ty, which decree
was afterwards
reversed, and
when the purcha-
ser had sold to
an innocent man,
held responsible
in equity to pay
the debt not rais-
ed by the sale, to
extent of the
price for which
he sold, deduct-
ing the price paid
at the sale under
the decree.

He and Price were bound by the covenant indorsed on the instrument evidencing the lien, to pay to Owen the amount which the proceeds of the sale of the house and lot might fall short of paying his debt, or the balance of his debt not satisfied by the sale of the house and lot. Price's heirs not being before the Court, nor parties to the proceedings under which the lot was sold, ought not to be affected, by the sale made under the decree, by which the house and lot was sacrificed. They, in conjunction with Bainbridge, held a lien upon the house and lot by right of substitution for their indemnity, and were inter- ested in their selling for their full value. But though in- terested in this manner, the legal title was not in them, and having been purchased by Bainbridge and passed into the hands of an innocent purchaser, long since, under a judicial sale, which has not been set aside or impeached, and who has, under the faith of his purchase, made large and valuable improvements on the premises, if Price's heirs can be indemnified, to the extent of the *value* of the house and lot, or can have their *value*, at the time of the sale, applied towards lessening their liability for the residue of the debt, it is all they can equitably ask, and this they have an equitable right to, and can obtain without disturbing the just rights of the innocent pur- chaser.

It is to be presumed that the $600 which Bainbridge obtained from Shields, in his sale of the house and lot to him, was the full value of the property at that time, and for this sum, after deducting the $100, which he paid on the purchase of Taylor for his use, he should account and pay towards the satisfaction of Owen's debt. He was a joint covenanter with Price; held jointly with him a lien upon the property, or joint equitable right to be substi- tuted to Owen's lien, upon the payment of his debt; was a party to the suit, and well apprised of the interest and true condition of Price's heirs, and ought not to be al- lowed to pocket the profits of a speculation, made by the purchase of the property at a sacrifice, made under a de- cree which was rendered when they were no parties to the suit. Had he not sold the house and lot, but now held it under his purchase, they could require the premises to be

sold and the proceeds to be applied towards the payment of Owen's debt, as they, not being parties to the proceedings under which it was sold, would not be concluded by it, at least as to Bainbridge, who cannot claim the attitude of an innocent purchaser. As he has sold the premises and pocketed its value in money, they may *affirm* the sale and demand of him an application of the money received to the payment of Owen's demand. Had there been no decree, and he had sold the premises and received the money, he most assuredly would be compelled to account, in the payment of Owen's debt, for the sum so realized out of the property held in trust for their mutual indemnity, and could call upon Price's heirs for a contribution of the excess only of Owen's debt, over and above the amount so received. As between Price's heirs and himself, the decree and purchase, and sale made by him are no more operative than if no decree had been rendered; so that he stands in the condition of selling the trust property, in which he and they were equally interested, and whilst he stood in a *quasi* confidential relation to them, and of receiving the entire proceeds of the sale. Good faith requires that the fund so received should be applied to the mutual benefit of both. But as it is evident that the amount received on the sale was the full value of the property in its then condition, and that it was rapidly sinking into ruin, and if not sold but permitted to remain unoccupied and unrepaired till the present time, that it would not have commanded more, and certainly not so much as Bainbridge sold it for; and as it was obviously to the advantage of Price's heirs and all parties, that it was then sold by Bainbridge, they cannot, in good conscience ask that a greater amount than the sum received by him, shall be applied in payment of the joint liability to Owen.

Decree reversed and cause remanded that a decree may be rendered in favor of Owen's administrator against Bainbridge, for five hundred dollars of the amount of the complainant's demand, with interest from the time of the sale to Shields, and that a decree may be rendered for the residue of the demand, with interest and costs against

Bainbridge and Price's heirs, to be levied as the law re-
quires.

*Browne and Loughborough,* for plaintiffs : *Guthrie* for
defendants.